[Civil No. 3868. Filed November 16, 1937.]

[73 Pac. (2d) 700.]

THE EMPLOYERS' LIABILITY ASSURANCE CORPORATION, LIMITED (Defendant Insurance Carrier), Petitioner, v. THE INDUSTRIAL COMMISSION OF ARIZONA; H. MYERSON, Doing Business as COPPER CREEK MERCANTILE COMPANY (Defendant Employer), and MANUEL V. GUERRA (Defendant Employee), Respondents.

Messrs. Darnell, Pattee & Robertson, for Petitioner.

Mr. Don C. Babbitt and Mr. Howard S. Twitty, Mr. Otto E. Myrland and Mr. A. O. Johnson, Associate Counsel, for Respondents.

McALISTER, C. J.—The Employers' Liability Assurance Corporation, Limited, an insurance carrier for the Copper Creek Mercantile Company, asks this court to set aside an order of the Industrial Commission awarding Manuel V. Guerra compensation for injuries received by him while in the employ of that company. It contends that the injuries of Guerra were not received from an accident arising out of and in the course of his employment and that the Industrial Commission erred in so holding. The correctness of this contention depends wholly upon the facts which, so far as material, are stated below.

Guerra, a boy of seventeen years of age, was on August 1, 1936, and for seven months prior thereto had been employed by the Copper Creek Mercantile Company in its general merchandise store at Copper

Creek, Pinal county, in this state. The business was owned by Hymie Myerson and his brother, and the following persons were working for them in the store: Jack Schulman, the bookkeeper and custodian of the funds, who sold dry goods at times; Candelario Trujillo, a clerk who sold groceries and dry goods; Augustine Figueroa, who had charge of the meat department; and Manuel V. Guerra, who transported the stock to the shelves as they became depleted, swept out the building, and sold goods when the store was busy. Guerra testified, in effect, that between two thirty and three o'clock in the afternoon of August 1, 1936, as he was moving cases of merchandise in the stock room, he found an ordinary drinking glass almost filled with web, dirt and sediment, and upon examining it a little more closely saw something move and threaten to bite his finger as he started to take it out of the glass. He then recognized it as a scorpion, whereupon he withdrew his finger, took the glass to the front room and showed the scorpion to Figueroa, Trujillo and Schulman, with whom he conversed concerning it. His intention was to take it out of the glass and kill it by pouring sulphuric acid on it. Schulman, however, told him not to remove it but kill it in the glass, though he did not suggest how this should be done. Guerra's purpose became apparent, however, when he brought from the kitchen the acid, which, according to Mr. Myerson, was kept there to extinguish fires, and took it and the glass outside the building, just in front of the door, where he poured some acid into the glass which, unknown to him or anyone else present, contained also, hidden under the web and débris, a dynamite cap, and the moment the acid and the cap came in contact an explosion occurred which resulted in such serious injury to him that he spent seven weeks in the hospital and suffered the loss and removal of his right eye.

According to Guerra he looked to the other three employees for instructions in his work but mostly to Schulman, who, the three employees understood, was in charge of the store when he was there. Mr. Myerson testified, however, that he himself was up there from Tucson three or four times a month, that each man had his actual work to do and that it wasn't necessary for him to appoint any certain one to see that each did his work, because it was always done right. He stated also that Guerra swept up, was handy man around there, knew his duties pretty well and would not, he thought, have taken orders, but that "if the grocer wanted groceries, Manuel would take care of them; if the butcher wanted meat, he would take care of the meat." In other words, he would do what they told him to in the way of filling up stock on the shelves and also in making repairs.

Guerra had seen scorpions around the store before and he and the other employees had killed them but he said no one had instructed him to kill scorpions, because that was not necessary, since they sometimes "cause trouble for some people walking up buildings." In reply to the question, "How did you come to put acid on the scorpion?" he answered, "I was curious to see," but did not say what he wanted to see.

Mr. Myerson testified that "it would be part of his work to kill the scorpion," but he thought it was not an easy matter to say whether the method he chose was a deviation from his regular work and part play, or whether it was just the mode he took to kill the scorpion, though "it was," in his opinion, "just a way of killing it. One person would find it natural to step on it and kill it; another would hit it with a rock, and, naturally, the mode that Guerra chose to kill the scorpion was more or less a long drawn out affair. I don't imagine one person out of seven would do anything like that, but it is rather difficult for one to say

that his method is wrong in doing it." It was not, according to Myerson, customary for the employees out there to indulge in a little "horseplay" when they were not busy and it is his impression that the "boy was just going about his business of getting rid of the scorpion." No one knew where the dynamite cap came from because the store did not sell them.

The only question presented by the single assignment is whether the accident which caused Guerra's injury arose out of and in the course of his employment. The petitioner contends that at the time the injury was received Guerra was not acting within the course of his employment and that the accident could not have arisen out of it. It is not, however, seriously argued that killing the scorpion was an act outside his employment, but it is practically admitted that this might be classed as one of his duties. While he had not been employed specifically to kill scorpions or instructed to destroy them, or to keep the store free from them, yet, in view of the fact that they have a poisonous sting, one that is more or less dangerous since it many times causes serious results to people, it would seem to follow that to dispose of the one found in the store was, at least, an incident to his employment and, therefore, an act he might be expected to perform. His duty in this respect would be much the same as that of an employee who should find a rattlesnake in the store, the only difference being one of degree arising from the fact that the bite of a snake is more dangerous than the sting of a scorpion.

The main contention of the petitioner, however, is that even though the killing of the scorpion should be considered as coming within Guerra's employment, he took such an unusual, unheard of and unnatural way of destroying it that the accident resulting therefrom could not have arisen out of his employment. If, it is urged, a scorpion were so difficult

to kill that it was necessary to resort to the method employed in this case to bring that end about, it might properly be said that an injury received in an accident caused by killing one in that manner arose out of the employment, but since the usual, ordinary way of disposing of one is stepping on it or striking it with a stick, club or other implement, it must follow that an accident due wholly to the unusual and extraordinary way Guerra chose did not arise out of or in the course of his employment. It is doubtless true that an employee may perform an act properly within his line of duty in such an unusual and uncalled for way that it could not be held that an accident resulting from it arose out of his employment, and the only really controverted question presented by the record in this case is whether the method chosen by Guerra in killing the scorpion falls within this class.

It is perhaps true as the petitioner contends, that Guerra could have selected a more practical method of destroying the scorpion than pouring sulphuric acid on it, such, for example, as one of those just pointed out as the usual way of doing it, but his failure to do so does not necessarily imply that the method he did choose was so unreasonable and unusual that it placed the explosion resulting from it outside his employment. Its real character must be determined by its nature and the circumstances surrounding Guerra at the time. It must be kept in mind that it was his duty to kill the scorpion and, while his first thought following its discovery seemed to be to do this by pouring acid on it after it and the débris had fallen from the glass or been thrown to the ground or platform, he changed his plan and poured the acid in the glass when Schulman, whom he regarded as his superior, told him not to remove it but kill it in the glass. He could, of course, even after Schulman's suggestion, have crushed it in the glass with a stick or some other

object, but we are unable to see why pouring into a glass a liquid that would quickly destroy it and do no harm to anyone would be so unreasonable and impractical as to take it out of the course of his employment. Perhaps it was unusual but the acid was in the store, easily accessible, and, so far as the record shows, the only liquid there that would accomplish the purpose. It was not, it is true, kept there to kill scorpions or any other living object, but this is wholly immaterial since it was as suitable, perhaps, for that purpose as any other weapon that could have been conveniently procured for destroying the scorpion in the glass.

The petitioner contends further that Guerra used the acid because he was curious to see what the effect of sulphuric acid on a scorpion would be, that is, as a mere matter of sport. The fact, however, that he desired to see how it would affect a scorpion did not make it any more impractical or unreasonable or less suitable for the purpose than if he had not entertained this thought. His primary purpose was to destroy the scorpion, his way of doing it secondary.

Whether it was reasonable or unreasonable to use acid must be judged in the light of the situation confronting Guerra, and without giving the fact that there was a dynamite cap in the glass any thought whatever. He did not know it was there and was not chargeable with such knowledge, and in the absence of that powerful explosive there would have been no accident, since there was nothing else in the glass that could have brought this result when touched by the acid.

The conclusion reached by the Industrial Commission that the accident causing Guerra's injury arose out of and in the course of his employment was correct and must be sustained.

The award is affirmed.

ROSS and LOCKWOOD, JJ., concur.